IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH K., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 24 C 37 |
| | ) | |
| | ) | Magistrate Judge M. David Weisman |
| CAROLYN COLVIN, Commissioner of | ) | |
| Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Elizabeth K. appeals the Commissioner's decision finding Plaintiff not disabled and denying her applications for disability insurance benefits, child disability benefits, and supplemental security income benefits. For the reasons set forth below, Plaintiff's motion to reverse or remand the Commissioner's decision [18] is granted, and Defendant's motion for summary judgment [21] is denied. Civil case terminated.

## **Background**

Plaintiff filed applications for disability insurance benefits, child disability benefits, and supplemental security income benefits, alleging disability beginning January 1, 2010. (R. 15.) Plaintiff's claims were denied initially, on reconsideration, and following a hearing by an Administrative Law Judge. (R. 12-48.) Plaintiff filed a complaint on November 4, 2021, (R. 1899-1904), and this Court issued an opinion that reversed the ALJ's decision on September 23, 2022. (R. 1905-11.) The Appeals Council issued an order that remanded the matter to the ALJ on January 23, 2023. (R. 1913-18.) On September 5, 2023, the ALJ again issued an unfavorable 35-page decision. (R. 1777-1826.) Plaintiff seeks review of the ALJ's decision. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

The ALJ found that Plaintiff had the severe impairments of systemic lupus erythematosus, obesity, pervasive developmental disorder, autism spectrum disorder, Asperger's syndrome, attention deficit hyperactivity disorder, anxiety disorder, and depressive disorder, none of which

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on November 30, 2024. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn Colvin should be substituted for Martin O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

met or medically equaled the severity of one of the listed impairments. (R. 1784-85, 1789.) According to the ALJ, Plaintiff had the residual functional capacity ("RFC") to perform sedentary work except she could no more than occasionally push/pull with the lower extremities; she could never climb ladders, ropes or scaffolds; she could no more than frequently balance and could no more than occasionally climb ramps or stairs, balance, stoop, crouch, kneel and crawl. The ALJ also determined that Plaintiff should avoid concentrated exposure to extreme heat, extreme cold, humidity, lung irritants/pollutants, and vibration, and all exposure to work hazards such as unprotected heights and dangerous moving machinery. (R. 1793.) Further, the ALJ found that Plaintiff could understand, remember, carry out, and sustain simple routine tasks, and perform the same tasks day in and day out; she could have no contact with the public for work purposes and no more than occasional contact with coworkers and supervisors for work purposes; and she could not perform work where a machine sets the pace of work; and she must go to the same location to perform work tasks day in and day out. *Id*. The ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform. (R. 1814.)

Plaintiff contends the ALJ committed reversible error in three ways: by discounting the opinion evidence from specialist Dr. Gogoneata; by discounting opinion evidence from treating physician Laura Norman, D.O.; and by failing to set forth a legally sufficient symptom evaluation.

**Analysis**

"ALJs are 'subject to only the most minimal of articulation requirements'— an obligation that extends no further than grounding a decision in substantial evidence." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024) (quoting *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024)). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is not the job of a reviewing court to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920. The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity to perform ("RFC") her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). Plaintiff contends that the ALJ erred on several grounds: The ALJ reversibly erred in discounting opinion evidence from specialist Dr. Gogoneata; the ALJ

2

reversibly erred in discounting the opinion of treating physician Laura Norman, D.O.; and the ALJ failed to set forth a legally sufficient symptom evaluation.

Plaintiff first argues that the ALJ reversibly erred in failing to properly evaluate the opinion of Plaintiff's treating rheumatologist, Dr. Gogoneata, who opined that Plaintiff could work six-hour shifts, required a two-day break between shifts to recover from pain and fatigue, and as a result, Plaintiff could work no more than a total of 12-to-18 hours per week. (R. 1540.) According to Plaintiff, the ALJ rejected this opinion based on logically unsound grounds, asserting that the ALJ: (1) relied too heavily on Plaintiff's reports about her activities of daily living; (2) failed to consider that Dr. Gogoneata's opinion was consistent with Dr. Norman's opinion; (3) deferred to an allegedly flawed analysis of the prior administrative medical findings; and (4) failed to explain how the evidence better supported a sedentary RFC than Dr. Gorgoneata's opinion. (Pl.'s Br. Supp., Dkt. # 18, at 7-10.) The Court finds none of these contentions sufficient to support reversal.

As to the ALJ's assessment of daily activities, the applicable regulations authorize ALJs to consider a claimant's daily activities as a factor in evaluating subjective symptom statements. *See* 20 C.F.R. § 404.1529(c)(3), and an ALJ may not equate daily activities with the ability to perform full-time work. *See Beardsley v. Colvin*, 758 F.3d 834, 838-39 (7th Cir. 2014). Here, the ALJ considered the evidence in the record and articulated the reason for discounting Dr. Gogoneata's opinion on Plaintiff's RFC. (R. 1811-12) ("However, as previously detailed in the undersigned's evaluation of the opinions of Ms. Bodine, Ms. Monroe, Dr. Norman, and Dr. Wolff, the claimant has reported engaging in diverse activities requiring significant degrees of sustained attention and concentration, including shopping by computer and in stores, writing fiction, playing 'Pokémon Go' and other phone/console games, and driving."). Moreover, Plaintiff's representations regarding the ALJ's assessment ignores the ALJ's following comprehensive observations, which she "previously detailed":

> In her several Function Reports, the claimant variously reported engaging in household chores and other activities involving laundry, light cleaning, meal preparation (including "occasional home cooked meals like soup, pasta, casseroles, etc."), and shopping "by computer" as well as in stores. She further acknowledged driving (8E; 16E). Driving requires significant sitting, reaching, handling, and use of foot controls. Upon her discharge from physical therapy in October of 2014, the claimant was noted as "able to return to full duty with work activities of daily living," and as "able to return to typing activities" (4F/1). In November of 2016, the claimant reported being "busy with Pokémon Go" (7F/15). At her consultative psychological evaluation in December of 2019, the claimant reported that "I occasionally cook, grocery shop some, and do my own laundry. I socialize online, read, do gaming and draw or write some" (23F/2). During the February 2021 hearing, she testified that her activity with Pokémon Go has included traveling by herself to various locations to accomplish game objectives, including to her local downtown area. She also testified that she continues to drive and has no problems with sitting. These overall

3

> descriptions of the claimant's activities and abilities are less consistent with her allegations of complete disability (and the above-described administrative medical findings) and are most consistent with the above-listed residual functional capacity. In so concluding, the undersigned notes that the claimant consistently stated in her Function Reports that she can lift "15-20 pounds," notwithstanding her assertion during the hearing that she is "uncertain of the upper limit" of her lifting ability. However, the undersigned has accounted for the claimant's partially persuasive allegations of increased pain with activity (including prolonged standing and walking activity) by limiting her to a range of sedentary exertion.

(R.1811.) The ALJ further stated that the

> non-medical evidence [regarding Plaintiff's daily living activities] is inconsistent with Dr. Gogoneata's assessments regarding part-time (or intermittent part-time) work[] and is otherwise inconsistent with any allegations of disabling fatigue secondary to lupus or otherwise. Moreover, Dr. Gogoneata's opinion is otherwise inconsistent with the balance of the medical and nonmedical evidence, which is instead most supportive of and consistent with the above-listed residual functional capacity for the reasons previously detailed in evaluating the administrative medical findings of Dr. Kim and Dr. Madala.
.

(R. 1812.) Plaintiff's contention that the ALJ failed to consider how often Plaintiff drove or the length of her driving trips is unpersuasive in light of Plaintiff's testimony that she would drive to work several times a week and drove to downtown Naperville to play Pokémon Go. (R. 60-61.) "Claimant has failed to show that any of the findings and inferences that the ALJ made in reliance on [the plaintiff's] ability to drive are patently wrong." *Leon A. v. Kijakazi*, No. 20 CV 939, 2022 WL 3226822, at *11 (N.D. Ill. Aug. 10, 2022). Nor is Plaintiff's contention that the ALJ disregarded that Dr. Gogoneata's opinion was consistent with Dr. Norman's opinion, who also limited Plaintiff to part-time work, availing. Simply because two medical assessments "are purportedly consistent with each other does not, in and of itself, establish that any of the opinions were entitled to greater weight or that the ALJ erred." *Gwendolyn P. v. Kijakazi*, 20 C 3339, 2021 WL 5204858, at *9 (N.D. Ill. Nov. 9, 2021) ("The regulations require the ALJ to assess how consistent an opinion is with the entire record as a whole, not only with another opinion.") (citation omitted). Because the ALJ properly assessed Dr. Gogoneata's opinion with respect to the entire record, not just Dr. Norman, the Court finds no error.

Plaintiff further asserts that the ALJ erred when she deferred to a flawed analysis of the State agency medical consultants in evaluating Dr. Gogoneata's opinion "for the ALJ cited some normal and some abnormal findings, but the ALJ provided no supported rationale why normal findings were more probative than abnormal." (Pl.'s Reply, Dkt. # 23, at 5.) Plaintiff's argument in this regard is not entirely clear, but as the government notes, the ALJ extensively summarized

4

and considered the normal and abnormal findings and concluded that they supported a more limited RFC than recommended by Drs. Kim and Madala. The Court finds that "the ALJ properly engaged with both sides of the record, and Plaintiff cannot establish error simply because the ALJ weighed the evidence in a different way than plaintiff would have liked." *Esther V. v. Saul*, No. 19 C 8093, 2021 WL 1121123, at *7 (N.D. Ill. Mar. 24, 2021) (citation and internal quotation marks omitted).

For the fourth point of error as to the ALJ's assessment of Dr. Gogoneata's opinion, Plaintiff contends that the ALJ did not explain how the evidence better supported a full-time sedentary RFC than Dr. Gogoneata's opinion that Plaintiff could only work 12-to-18 hours a week. The Court disagrees. The Court provided a lengthy discussion of the medical and non-medical evidence and found it better supported a full-time sedentary RFC with certain limitations. As with the preceding issue, the ALJ provided such "relevant evidence as a reasonable mind might accept as adequate to support [her] conclusion.'" *Gedatus,* 994 F.3d at 900 (citation omitted).

Plaintiff next contends that the ALJ reversibly erred in discounting the opinion of treating physician Laura Norman, D.O., who wrote a letter to the Social Security Administration dated 3/24/20 stating that Plaintiff could only work 12-15 hours per week because "social interaction, prolonged standing, bending and reaching required at the level required for retail and other similar jobs, are fatiguing to her." (R. 1541.) According to Plaintiff, the ALJ erred when she faulted Dr. Norman for failing to include a function-by-function analysis because an examining physician need not include such an analysis. *See Colson v. Colvin*, 120 F. Supp, 3d 778 (N.D. Ill. 2015). But the ALJ's concerns were in the context of Dr. Norman's opinion that Plaintiff "should qualify for SSDI benefits." According to the ALJ,

> [a]ny statements regarding the claimant's purportedly 'disabled' status and status as an 'appropriate' recipient of Social Security benefits are deemed neither inherently valuable nor persuasive, as they address issues expressly reserved to the Commissioner of Social Security. . . . Furthermore, these statements are not consistent with the function-by-function analysis used by the Social Security Administration in determining disability. Accordingly, the undersigned declines to evaluate all such statements made by these additional clinicians.

(R. 1809.) Thus, the ALJ was not faulting Dr. Norman's purported failure to provide a function-by-function analysis, she was simply noting that any opinion that Plaintiff should receive disability benefits was not consistent with the function-by-function analysis used by the Social Security Administration.

Next, Plaintiff again argues that the ALJ improperly relied on Plaintiff's ability to shop, drive, play video games, write fiction, use an online application, and go to the movies to discount Dr. Norman's opinion. Plaintiff faults the Commissioner for failing "to address how on-line chat activity provided evidence of Plaintiff's ability to interact in person," and therefore asserts that the Commissioner waived the argument. The Court disagrees. The Commissioner expressly discussed the ALJ's consideration of Plaintiff's activities of daily living and their consistency with

5

Dr. Norman's opinion. (Def.'s Mem. Supp. Mot. Summ. J., Dkt. # 22, at 10.) No waiver occurred. After setting out Dr. Norman's opinion along with those of Nancy Monroe, A.P.N. and Dr. Wolff, the ALJ stated as follows:

> The claimant has variously acknowledged shopping in stores and "by computer," driving a car, writing fiction, playing video games by phone and on a console, using the "Discord" online chat application to communicate with other gaming and writing aficionados online, eating out and occasionally going to the movies (prior to the COVID-19 pandemic), and playing "Pokémon Go" (including in traveling by herself to her local downtown location to complete game related objectives (8E; 16E; 7F/15; 23F/1; hearing testimony)). All of these activities have required varying but significant degrees of sustained attention and concentration, and many have involved social exposure and/or direct social interaction with others. As such, they are inconsistent with the above-described assessments that the claimant is only able to perform part-time and/or intermittent part-time work.

(R. 1809.) As already discussed above, the ALJ noted the daily activities in which Plaintiff engaged and incorporated those into Plaintiff's RFC. Plaintiff cites no authority for the proposition that the ALJ must address all of Plaintiff's activities and specifically reconcile each with a particular element of the RFC.

Nevertheless, in a related argument, Plaintiff also contends that the ALJ "was responsible for determining the persuasiveness of Dr. Norman's opinion by determining how evidence supported the opinion and was consistent with the opinion." (Pl.'s Br. Supp. Reversal, Dkt. # 18, at 11) Plaintiff lists various aspects of her treatment notes that showed hypertonicity, diminished muscle strength and range of motion, tenderness to palpation, insomnia, and fatigue, among other things, (Pl.'s Br. Supp. Reversal, Dkt. # 18, at 11), and states that the ALJ "needed to weigh evidence and explain why certain findings were of greater evidentiary value than others." (*Id.*) In her brief, the Commissioner interpreted the argument as one generally addressing the weight of the evidence and asserted that it is not the Court's role to reweigh the evidence. (Def.'s Mem. Supp. Mot. Summ. J., Dkt. # 22, at 11.) In her reply, however, Plaintiff clarified and elaborated on the "supportability" aspect of her argument, stating that the ALJ "failed to explain how she considered [the] supportability of Dr. Norman's opinion." (Pl.'s Reply, Dkt. # 23, at 10) ("[When] assessing opinion evidence[,] the ALJ has a regulatory obligation to explain how she considered supportability.") (citing 20 C.F.R. § 404.1520c(b)(2)). Plaintiff further noted in her reply that "[g]iven that the ALJ did not explain a supported assessment supportability and consistency consistent with the regulatory requirement, remand is required." (*Id.*)

Because this Court was concerned that Plaintiff's argument on this point had not been as fully developed in Plaintiff's opening brief as it was later developed in her reply brief, the Court ordered the Commissioner to file a sur-reply. In the sur-reply, the Commissioner states that "[t]he updated medical source opinion regulations at 20 C.F.R. § 416.920c did not change the ALJ's duty to minimally articulate his analysis of the supportability of Dr. Norman's medical opinion and, to the extent plaintiff is arguing that the ALJ needed to reiterate his assessment of the evidence in the

paragraph discussing the opinions, no such articulation requirement exists." (Sur-reply, Dkt. # 25, at 1.) The Commissioner contends that the Court "should reject [P]laintiff's suggestion that the updated opinion regulations introduced a heightened articulation standard, particularly to the extent plaintiff asserts." (*Id*. at 3.) The Court does not believe the revised regulations introduced a heightened standard. As another court summarized:

> Because Plaintiff's claim was filed after March 27, 2017, the ALJ was required to weigh agency consultant Dr. Dow's opinion under the regulations set out in 20 C.F.R. § 404.1520c. Under these regulations, the ALJ evaluates all medical source opinions using the following factors: supportability, consistency, relationship with the claimant, specialization, and any other factors which tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors to be considered in evaluating how persuasive an ALJ finds a medical source's medical opinions, and as a result, an ALJ must discuss how she considered those factors. 20 C.F.R. § 404.1520c(b)(2); *see also Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022).
>
> For a medical opinion to be supportable, it must be based on "the objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

*Craig R. v. O'Malley*, No. 23 C 50035, 2024 WL 1363664, at *2 (N.D. Ill. Mar. 29, 2024).

According to the ALJ, she was only considering Dr. Norman's letter as it related to Plaintiff's "mental functionality." (R. 1809) (discussing Dr. Norman's letter after stating that "[a] number of other medical professionals offered statements or opinions regarding the claimant's mental functionality . . . ."). Notably, however, the ALJ did not actually discuss or assess Dr. Norman's statements as to mental functionality. Instead, as quoted above, the ALJ only noted Plaintiff's daily activities and indicated that they exhibited "significant degrees of sustained attention and concentration, and many have involved social exposure and/or direct social interaction with others." (*Id.*) Moreover, the ALJ did not refer to the balance of Dr. Norman's letter, which is that Plaintiff cannot work full time because of pain and fatigue, not her mental impairments. Dr. Norman, who indicated that, at the time of the letter, she had been Plaintiff's primary care physician for three years, noted that "prolonged standing, bending and reaching at the level required for retail and similar jobs, are fatiguing to her," that as a "result of her lupus, depression, and obesity, she has persistent chronic muscular pain and fatigue (especially in her shoulder, neck, back, and ankle[s]," and that Plaintiff has received "intensive physical therapy in the past year and sees me for Osteopathic Manipulation Therapy ["OMT"] to temporarily relieve her pain." (R. 1541.) Dr. Norman further stated in her letter that Plaintiff quit her job in February 2019 after she had been

7

working 32 hours per week to do "extensive Physical Therapy and OMT . . . ." (*Id*.) As noted above, after discussing Plaintiff's various activities, the ALJ concluded that "[a]ll of these activities have required varying but significant degrees of sustained attention and concentration, and many have involved social exposure and/or direct social interaction with others," and therefore, are not consistent with part-time or intermittent part-time work. (R. 1809.) The ALJ then states:

> Moreover, for all of the other reasons previously detailed in evaluating the administrative medical findings of Dr. Hollerauer, Dr. Morrow, and Dr. Tin, the balance of the medical and nonmedical evidence is inconsistent with the above-described assessments[] and is instead most supportive of and consistent with the above-listed *mental residual functional capacity*.

(R. 1809-10 (emphasis added.) The ALJ's failure to discuss the supportability of Dr. Norman's opinion, both as to Plaintiff's mental and physical functionality, is an error that requires remand on its own. *Craig R.* 2024 WL 1363664, at *3.

      For the reasons stated above, the Commissioner's decision is reversed and remanded. Civil case terminated.

**Date**: December 17, 2024

*[signature: M. David Weisman]*

**M. David Weisman**
**United States Magistrate Judge**

8